```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
ROSENMAN FAMILY, LLC,

                    Plaintiff-Appellant,

         -against-

IRVING H. PICARD, as Trustee for the SIPA
Liquidation of BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,

                    Defendant-Appellee,

         and

JP MORGAN CHASE BANK, NA,

                    Defendant.
------------------------------------------X
```

MEMORANDUM AND ORDER

09 Civ. 2576 (NRB)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/30/09

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Appellant Rosenman Family, LLC ("Rosenman" or "Appellant") appeals from a decision of the United States Bankruptcy Court (Lifland, J.), entered on February 24, 2009, granting the motion of Irving H. Picard, Esq., Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("Trustee") to dismiss the Rosenman Complaint. The Securities Investor Protection Corporation ("SIPC") joined the Trustee's Motion to Dismiss below and now joins the Trustee in opposing the appeal.

We affirm Judge Barton R. Lifland's order granting the motion and dismissing Rosenman's complaint.

**BACKGROUND**

The facts of this appeal are set out completely in the lower court opinion. For context, we include a summary of those facts here.

This action arises out of the much-publicized downfall of Bernard L. Madoff Securities ("BMIS"), a broker-dealer and investment advisory firm through which Bernard L. Madoff ("Madoff") ran a massive Ponzi scheme. Prior to the revelation of the scheme, Madoff was a sought-after money manager who appeared to generate consistently large returns for his investors.

On December 3, 2008, Martin Rosenman, the Rosenman Family's managing member, called Madoff to discuss a potential investment in the BMIS investment advisory fund. Madoff informed Mr. Rosenman that the fund was closed until January 1, 2009, but that Rosenman "could wire money to a BMIS account where it would be held until the fund opened after the New Year." Complaint ¶8. On December 5, 2008, Rosenman wired 10 million dollars pursuant to wiring instructions he received from a BMIS employee to the BMIS Account at JP Morgan Chase Bank held in Madoff's name ("the Chase Account"). Complaint ¶¶10, 11. On December 9, 2008, Rosenman received a "Confirmation" from BMIS documenting a

purchase of 10 million dollars of U.S. Treasury Bills on behalf of the Rosenman account, though Rosenman maintains that transaction was never authorized and it is now clear that the transaction never actually occurred. Complaint ¶¶12, 13. At oral argument, Appellant's counsel emphasized that no specific security transaction was authorized by Rosenman.

On December 11, 2008, Madoff was arrested on charges of federal securities fraud. On December 12, 2008, a temporary restraining order was issued in the suit brought by the Securities and Exchange Commission against Madoff that prevented the transfer of funds from any BMIS account, including the Chase Account. Complaint ¶18. On December 15, 2009, pursuant to the Securities Investor Protection Act of 1970, 15 U.S.C. ¶¶ 78aaa et seq., Irving H. Picard was appointed Trustee to oversee the liquidation of BMIS.

Rosenman filed a Complaint in the United States Bankruptcy Court for the Southern District of New York, seeking declaratory and injunctive relief to recover the $10 million they had deposited in the Chase account. The Trustee and SIPC moved to dismiss, and on February 24, 2009, Judge Lifland granted the motion and dismissed the Complaint. <u>Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec., LLC</u>, 401 B.R. 629 (Bankr. S.D.N.Y. Feb 24, 2009). Rosenman then brought this appeal of

the Bankruptcy Court's ruling.

**DISCUSSION**

**I. Standard of Review**

When reviewing a Bankruptcy Court's decision, we "accept[ ] its factual findings unless clearly erroneous but review[ ] its conclusions of law de novo." In re DG Acquisition Corp., 151 F.3d 75, 79 (2d Cir. 1998); see also In re BDC 56 LLC, 330 F.3d 111, 119 (2d Cir. 2003). As with every review of a dismissal under Fed. R. Civ. Pro. 12(b)(6), we accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

**II. Issues Presented**

The issues presented on appeal are (1) whether the deposit made by Rosenman in the BMIS Chase account brought Rosenman within the definition of "customer" for the purposes of the Securities Investor Protection Act ("SIPA"), (2) such that the deposited funds are "customer property" and subject to the provisions of the Act. We agree with Judge Lifland's affirmative answers to those issues for the reasons set out in the lower court opinion and thus affirm his ruling.

-4-

**III. "Customer" Status within the meaning of the Securities Investor Protection Act**

In affirming Judge Lifland's opinion, we write further only to answer appellant's arguments before this court as to the definition of "customer" under SIPA. SIPA governs the liquidation of a broker dealer, creating a priority class of "customers." SIPA defines a "customer" as "any person… who has deposited cash with the debtor for the purpose of purchasing securities." 15 U.S.C. § 78lll(2). Appellant objects to the lower court's determination that "[r]egardless of whether the funds were to be invested immediately or upon Rosenman's authorization, the... sole purpose of wiring funds to the Chase Account was to effectuate future securities transactions." Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec., LLC, 401 B.R. at 635.

Appellant endeavors to differentiate its deposit from those of a "customer" by asserting that the money at issue was given to Madoff only to "hold" and was subject to a later decision as to whether to authorize trading. Appellant argues that the lack of a specific authorization to trade specific securities precludes the designation of Rosenman as a "customer" within the definition of SIPA.

However, appellant's position is advanced without case law support for the proposition that a specific authorization instruction is required to move a party into "customer" status where funds were wired to a broker-dealer after an inquiry about future investment in a specific fund through that broker-dealer. Indeed, when "authorization" is at issue in the relevant case law, it is discussed only as determinative of whether a SIPA investor has a claim to recover cash as opposed to the actual securities purchased on behalf of the customer.[1]

Appellant's reliance on In re Old Naples Securities for the proposition that overly vague instructions accompanying a deposit will remove the depositor from customer status is inapposite. The actual holding of that case is that the customer must only have had "some notion" of the securities in which they sought to invest. 223 F.3d 1296, 1305 (11th Cir. 2000)(emphasis in original). The court then noted that an instruction to simply make "stock market investments" without

---

[1] See e.g. In re Klein, Maus & Shire, Inc., 301 B.R. 408, 419 (Bankr. S.D.N.Y. 2003)("The SIPA statute contemplates the return to customers of cash and securities that were 'received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts' of the customers. So long as such property is owed on the SIPA filing date, the investor has a 'customer' claim. The fact that the property is missing, perhaps due to unauthorized trading, does not affect 'customer' status." (citations omitted)); In re Stratton Oakmont, Inc., 2003 WL 22698876 (S.D.N.Y. 2003)(looking to "the transaction notice provided to customers and their legitimate expectations" to determine nature of recovery, including that claimants should get cash if broker "embezzled Claimants' assets instead of investing them in an existing money market fund" (citing SEC v. Goren, 206 F.Supp.2d 344, 351 (E.D.N.Y. 2002))).

any elaboration was potentially too vague. Id. In contrast, here, as Rosenman states in its complaint,

> Mr. Rosenman spoke by telephone with Bernard Madoff, the sole owner of BMIS, concerning [Rosenman's] potential investment in BMIS' investment advisory fund. Mr. Madoff stated that the fund was closed until January 1, 2009, but that Mr. Rosenman could wire money to a BMIS account where it would be held until the fund opened after the New Year. Complaint, ¶8.

Rosenman has clearly demonstrated "some notion" of the securities in which it sought to invest their deposit.

While we feel great sympathy for the circumstances the Rosenman Family finds themselves in, we share that sympathy with all of the victims of BMIS. However, the assertion that Rosenman had not specifically authorized BMIS to make a specific trade does not take it outside of SIPA's "customer" class when it had already entrusted their funds to an account under the control of BMIS in anticipation of the BMIS fund opening after the New Year.

As discussed at oral argument, we see no difference between the facts of this case and the situation where an individual opens a non-discretionary account at a retail brokerage firm, expressing an intent to make large volume trades, and is therefore told that he must have funds in deposit before the broker will execute a trade. Assume further that the requested

-7-

deposit is made, but the broker goes into liquidation before any trade is made. In that situation, as here, the depositor would still be a "customer" within the definition of SIPA.

Finally, Rosenman has alleged no alternative purpose for the transfer to Madoff. At oral argument, appellant's counsel responded to this observation by alleging that Rosenman could have gotten his money back from Madoff in the New Year. Oral Arg. Tr. 11:12-24 (Oct. 26, 2009). Whether this was accurate or not,[2] the money was still transferred with the intent to purchase securities if the money remained with Madoff, as it did until the time that the firm went into liquidation.

As set out more fully in the opinion below, SIPA is clear that once a depositor has entrusted funds with the debtor, it is the depositor's purpose that controls the finding of "customer" status. Here, Rosenman's purpose as alleged in the complaint clearly was the eventual investment in the fund discussed with Mr. Madoff on December 3, 2008, whether he had explicitly authorized the purchase of any specific securities in furtherance of that purpose or not.

## CONCLUSION

---

[2] We note, as did the court below, that these funds were not in escrow or otherwise segregated from the Madoff customer account. For the purpose of a 12(b)(6) motion, however, we will assume appellant could regain access to the funds.

For the foregoing reasons, the Bankruptcy Court's decision is affirmed.

**IT IS SO ORDERED.**

Dated:   New York, New York
         November 30, 2009

                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Counsel for Appellant**
Howard Kleinhandler, Esq.
Sara Spiegelman, Esq.
Wachtel & Masyr, LLP
110 East 59th Street
New York, NY 10022

**Counsel for Appellee Irving H. Picard, Trustee**
David J. Sheehan, Esq.
Seanna R. Brown, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

**Counsel for Appellee SIPC**
Josephine Wang, Esq.
Kevin H. Bell, Esq.
Hemant Sharma, Esq.
Office of the General Counsel
Securities Investor Protection Corporation
805 15th Street, N.W., Suite 800
Washington, DC 20005